UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TRAVIS BOTT,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL BOGGS, and DAWN BOGGS,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART [9] DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:26-cv-00233-DBB-JCB<br><br>District Judge David Barlow |

Before the court is Defendant Michael Boggs and Defendant Dawn Boggs' Motion to Dismiss[1] Plaintiff Travis Bott's Complaint.[2]

## BACKGROUND

This case arises from allegations of fraud related to Plaintiff's investment in an intellectual property development project. In his Complaint, Mr. Bott alleges as follows:

**"D.A.W.N.N." Investment**

In 2019, Mr. Boggs began working as a software developer for a company owned by Mr. Bott.[3] Around October 2024, after several years of employment at the company, Mr. Boggs approached Mr. Bott and invited him to invest in an artificial intelligence-based cryptocurrency trading system known as D.A.W.N.N. (the "System").[4] The System would purportedly exploit minor price discrepancies across numerous cryptocurrency exchanges to create low risk returns

---

[1] Motion to Dismiss ("MTD"), ECF No. 9, filed Apr. 8, 2026.
[2] Compl., ECF No. 1-1, filed Mar. 23, 2026.
[3] *Id.* ¶¶ 8–10.
[4] *Id.* ¶ 11.

on Plaintiff's investment.[5] Mr. Bott ultimately invested money in the System via his company Intellitech Solutions, LLC ("Intellitech").[6]

**"Ironman" Investment**

Two months later, in December 2024, Mr. Boggs again approached Mr. Bott with a separate investment opportunity known as the "Ironman" project.[7] Mr. Boggs requested funds to hire developers and build the Ironman project.[8] He described the Ironman project as an "intellectual property development project" to create a software to upgrade cryptocurrency blockchain security encryptions and reduce the risk of hacking.[9] He represented to Mr. Bott that the resulting cryptocurrency security protocol would be adopted as the industry standard for all major cryptocurrency exchanges, including the D.A.W.N.N. system.[10] Mr. Boggs also stated that the Ironman project would benefit the System because an unnamed "reputable cryptocurrency exchange brokerage" had offered to make its "liquidity book" available to Mr. Bott and Mr. Boggs upon the implementation of the Ironman project.[11] This would allow them to process more transactions through the System and collect greater investment returns.[12]

Based on these representations, Mr. Bott agreed to fund the Ironman project in exchange for a fifty percent interest in the resulting intellectual property.[13] Mr. Bott and Mr. Boggs each signed a nondisclosure agreement related to the project.[14] Subsequently, Plaintiff transmitted a

---

[5] *Id.* ¶¶ 11–12.
[6] *Id.* ¶ 13.
[7] *Id.* ¶ 14.
[8] *Id.* ¶ 21.
[9] *Id.* ¶¶ 15–17.
[10] *Id.* ¶¶ 18, 24.
[11] *Id.* ¶¶ 26–27.
[12] *Id.* ¶ 27.
[13] *Id.* ¶ 30.
[14] *Id.* ¶ 29.

total of $5,685,751.30 to Mr. Boggs to develop the Ironman software.[15] In July 2025, Mr. Bott learned that the D.A.W.N.N. system was actually a Ponzi scheme, and he contacted Mr. Boggs about the Ironman program.[16] Mr. Boggs stated that the Ironman software was completed and that other companies had expressed interest in purchasing it.[17] However, Mr. Boggs refused to return unused investment funds to Mr. Bott, citing medical emergencies in his own family as the reason he needed to retain the funds.[18] Then, in October 2025, Mr. Boggs ultimately admitted that the Ironman project was a fraud and that he had used Plaintiff's investment money to pay for Ms. Boggs' medical bills and other personal expenses.[19]

**Texas Litigation**

The Motion to Dismiss relies in part on related litigation that is currently ongoing in the Southern District of Texas ("S.D. Texas Litigation").[20] Accordingly, for purposes of this motion, the court will take judicial notice of relevant filings in the S.D. Texas Litigation.[21] In that case, Intellitech, Mr. Bott's company, and other plaintiffs are suing Mr. Boggs and other defendants for their alleged roles in the D.A.W.N.N. system Ponzi scheme.[22] The S.D Texas Amended Complaint (the "Texas Complaint") alleges that the defendants fraudulently induced investors to invest upwards of $30 million in the System[23] based on representations that it was

---

[15] *Id.* ¶ 46.

[16] *Id.* ¶ 48.

[17] *Id.* ¶¶ 48, 53.

[18] *Id.* ¶¶ 50, 54, 68–71.

[19] *Id.* ¶¶ 65–66.

[20] MTD 14–18.

[21] The Tenth Circuit has explained that "federal courts, in appropriate circumstances, may take notice of Litigations in other courts, both within and without the federal judicial system, if those Litigations have a direct relation to matters at issue." *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979). Such matters may be considered when deciding a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[22] *See generally* S.D. Texas Litigation First Amended Compl. ("Texas Compl."), ECF No. 9-2, filed Apr. 8, 2026.

[23] *Id.* ¶ 38.

technologically sophisticated, secure, and low risk.[24] In reality, defendants allegedly used concealed infrastructure and fraudulent transactions within the System to simulate arbitrage trading while actually laundering invested assets for their own profit.[25]

## STANDARD

"Dismissal under Rule 12(b)(6) is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face."[26] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[27] "In evaluating a motion to dismiss, the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings."[28] Conclusory statements and legal conclusions are "not entitled to the assumption of truth."[29]

Generally, "a motion to dismiss should be converted to a summary judgment motion if a party submits, and the district court considers, materials outside the pleadings."[30] However, courts may also consider "documents that the complaint incorporates by reference,"[31]

---

[24] *Id.* ¶¶ 27–29, 37.

[25] *Id.* ¶¶ 56–66, 69.

[26] *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019) (citing *United States ex rel. Reed v. KeyPoint Gov't Sols.,* 923 F.3d 729, 764 (10th Cir. 2019)).

[27] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[28] *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1130–31 (10th Cir. 2024) (quoting *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021)) (also quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)) (cleaned up).

[29] *Iqbal*, 556 U.S. at 1951 (emphasis omitted).

[30] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999)).

[31] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).

"documents attached as exhibits to the complaint,"[32] and "matters of which a court may take judicial notice,"[33] including "facts which are a matter of public record."[34]

## DISCUSSION

In the Motion to Dismiss, Defendants argue that (1) the claims against Ms. Boggs should be dismissed because the court lacks personal jurisdiction over her,[35] (2) the claims against Mr. Boggs should be dismissed as impermissible claim splitting based on the related S.D. Texas Litigation,[36] and (3) the claims for unjust enrichment and accounting fail as a matter of law.[37] As an initial matter, the court notes that Plaintiff voluntarily dismissed all claims against Dawn Boggs after the Motion to Dismiss was filed,[38] so the court need not consider any arguments relating to those claims.

## I.   Claim Splitting

Mr. Boggs argues that all claims against him are barred by the rule against claim splitting.[39] "Federal district courts have the inherent power to administer their dockets so as to conserve scarce judicial resources."[40] "As between federal district courts . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation."[41] Under this principle, if two cases "between the same parties on the same cause of action are commenced in two different

---

[32] *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

[33] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[34] *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

[35] MTD 10.

[36] *Id.* at 14.

[37] *Id.* at 22–23.

[38] Notice of Voluntary Dismissal of Dawn Boggs, ECF No. 14, filed May 6, 2026.

[39] MTD 14.

[40] *Rosiere v. United States*, 650 F. App'x 593, 595 (10th Cir. 2016) (unpublished) (quoting *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995)).

[41] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

federal courts, the one which is commenced first is to be allowed to proceed to its conclusion."[42] Essentially, "[t]he rule against claim-splitting requires a plaintiff to assert all of its causes of action arising from a common set of facts in one lawsuit."[43]

In the Tenth Circuit, the test for a claim-splitting analysis asks "whether, assuming the first suit was already final, the second suit would be precluded under res judicata analysis."[44] Precluding a claim under res judicata requires " (1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits."[45] Because claim splitting involves the hypothetical preclusive effect of ongoing litigation, the first res judicata element is presumed to be met for purposes of a claim-splitting analysis, and courts need only consider the second and third elements.[46] Accordingly, the court will consider whether the causes of action and parties in this suit are the same as those in the S.D. Texas Litigation.[47]

---

[42] *Rosiere*, 650 F. App'x at 595 (quoting *Utah American Energy, Inc. v. Dep't of Labor*, 685 F.3d 1118, 1124 (D.C. Cir. 2012)).

[43] *Katz v. Gerardi*, 655 F.3d 1212, 1217 (10th Cir. 2011).

[44] *Id.* at 1219.

[45] *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1202 (10th Cir. 2000).

[46] *Katz*, 655 F.3d at 1218 ("Our precedent cannot be clearer: the test for claim splitting is not whether there is finality of judgment, but whether the first suit, assuming it were final, would preclude the second suit.").

[47] Mr. Boggs argues that the court should apply the four-factor test established by the Supreme court in 1894 in *The Haytian Republic. See* MTD 15; Reply in Support of Motion to Dismiss ("Reply"), ECF No. 17, filed May 20, 2026; *The Haytian Republic* 154 U.S. 118, 124 (1894). In *Katz,* the Tenth Circuit quoted *The Haytian Republic* for its factors and noted that "more recent cases analyze claim-splitting as an aspect of res judicata." *Katz*, 655 F.3d at 1217 (quoting *Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, 296 F.3d 982, 986 (10th Cir. 2002)). Accordingly, the test currently used in the Tenth Circuit is consistent with *The Haytian Republic* and incorporates the factors that Mr. Boggs argues should be applied.

## A.    Identity of the Cause of Action

"Suits involve the same claim (or cause of action) when they arise from the same transaction or involve a common nucleus of operative facts."[48] Under the "transactional approach" utilized in the Tenth Circuit,[49]

> [w]hat constitutes the same transaction or series of transactions is 'to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'[50]

Mr. Boggs argues that the claims in this case are the same as those in the S.D. Texas Litigation.[51] He characterizes the Ironman project as an "upgrade" to the D.A.W.N.N. system at issue in that case[52] and contends that the Texas Complaint includes numerous allegations about security precautions and about other entities and schemes associated with the System.[53] Mr. Boggs also argues that Mr. Bott's Complaint references the System numerous times[54] and that the causes of action and damages requested in both actions are similar.[55] Plaintiff responds that the System and the Ironman project are separate programs and arise out of different factual backgrounds and transactions.[56]

In this case, it does not appear that Plaintiff's Complaint and the Texas Complaint are based on the same cause of action. To be sure, there is some factual overlap between the two

---

[48] *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412 (2020) (brackets, citations, and internal quotation marks omitted).
[49] *See MACTEC, Inc. v. Gorelick,* 427 F.3d 821, 832 (10th Cir. 2005).
[50] *Yapp v. Excel Corp.*, 186 F.3d 1222, 1227 (10th Cir. 1999) (quoting Restatement (Second) of Judgments § 24 (1982)).
[51] MTD 16–18.
[52] *Id.* at 4.
[53] *Id.* at 6–7, 16–17.
[54] Reply 6–7.
[55] MTD 16–18.
[56] Opposition to Motion to Dismiss ("Opp'n") 7–8, ECF No. 15, filed May 6, 2026.

cases. As Mr. Boggs notes, Plaintiff invested in the Ironman project in part because doing so would allegedly give him access to "deep liquidity pools" that could then be used with the System to increase returns.[57] But considering the overall allegations in each case, they seem to arise out of separate transactions. The Texas Complaint alleges that Mr. Bott invested money through Intellitech in an AI arbitrage system controlled by a group of defendants with the understanding that the money would be invested and traded by the System to yield incremental daily returns.[58] Intellitech and other plaintiffs assert that they were deceived by representations that their funds would be secured behind multiple layers of authentication[59] and by fraudulent transfers within the System that mimicked arbitrage trading activity.[60]

On the other hand, the Complaint here alleges that Mr. Bott personally invested money with Mr. Boggs to fund the creation of a security and encryption software that would be implemented in all major cryptocurrency exchanges.[61] In exchange for his investment in the Ironman project, Mr. Bott was to receive fifty percent interest in the software, including any licensing rights.[62] Here, Plaintiff alleges that he was deceived by Mr. Boggs' representations that an anonymous group was developing the project, that Mr. Boggs would hire a development team, and that the project generally was ongoing.[63]

These allegations seemingly describe two separate fraudulent transactions. Though Mr. Bott may have been motivated to invest in the Ironman project in part because it would allegedly

---

[57] Compl. ¶¶ 26–27.
[58] Texas Compl. ¶¶ 27, 35, 37.
[59] *Id.* ¶¶ 28–29,
[60] *Id.* ¶¶ 71–77.
[61] Compl. ¶¶ 16–18.
[62] *Id.* ¶ 30.
[63] *Id.* at ¶¶ 16, 21.

8

benefit the D.A.W.N.N. system,[64] the operative facts underlying what he invested in, what he hoped to receive, and how he was allegedly deceived are different for each of the two investments. Defendant's arguments that the Ironman project is implicitly included in the Texas Complaint are not persuasive.[65] Mr. Boggs asserts that the S.D. Texas plaintiffs complain about alleged misrepresentations regarding the security of the System and other investment vehicles.[66] But the referenced allegations in the Texas Complaint only state that the System itself was represented as having a secure node infrastructure and requiring multiple layers of authentication[67] and that separate entities would be responsible for managing the pooled investment funds and supporting the System's infrastructure.[68] There is no clear indication that Mr. Boggs' alleged Ironman project fraud is related to or included in the S.D. Texas Litigation such that both cases involve the same cause of action.

Mr. Boggs' arguments relating to the requested relief in each case are similarly unpersuasive. He contends that the same relief is sought in both actions based largely on the similar amounts requested and because plaintiffs in both cases seek "recovery *from Mr. Boggs* of funds contributed to cryptocurrency technology endeavors."[69] In this case, *Mr. Bott* alleges that he paid Mr. Boggs $5,685,751.30 for the Ironman project investment,[70] and the Texas Complaint asserts that *Intellitech* invested $5,239,845.00 in the System.[71] These amounts are similar, but the allegations in the complaints suggest that the amounts represent separate investments in distinct

---

[64] *Id.* ¶¶ 24, 26–27.
[65] *See* Reply 7.
[66] *Id.*
[67] Texas Compl. ¶¶ 36–38.
[68] *Id.* ¶¶ 35, 74.
[69] Reply 5 (emphasis in original).
[70] Compl. ¶ 46.
[71] Texas Compl. ¶ 38.

programs. Likewise, the fact that each complaint requests the return of invested funds by Mr. Boggs does not indicate a common transaction when the funds themselves are distinct and were invested in different ventures. The court concludes that the causes of action alleged in each suit appear to arise from different transactions, so any judgment in the S.D. Texas Litigation would not preclude the claims asserted here under res judicata.[72] If subsequent developments in the cases change the record, Mr. Boggs may renew his motion.

### B.     Identity of the Parties

Mr. Bott and Mr. Boggs also dispute whether the parties are the same in this litigation and the S.D. Texas Litigation for purposes of claim splitting.[73] Because the court has already determined that the two cases involve different causes of action, no analysis of the parties involved is necessary. Claim splitting does not bar the case here, so the court declines to dismiss it on those grounds.

## II.     Unjust Enrichment

Mr. Boggs next argues that the unjust enrichment claim against him should be dismissed for failure to state a claim.[74] He contends that it fails because, as an equitable remedy, unjust enrichment is only available in the absence of a legal remedy, and in this case the Complaint pleads the existence of a valid contract, the nondisclosure agreement.[75] He also argues that the unjust enrichment claim seeks duplicative damages.[76] Plaintiff responds that the nondisclosure

---

[72] *See Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1202 (10th Cir. 2000).
[73] MTD 15–16; Opp'n 6.
[74] *Id.* at 22.
[75] *Id.*
[76] *Id.*

agreement does not cover the claims at issue and that he is permitted to assert multiple claims in the alternative at this stage.[77]

Mr. Bott is correct that Rule 8 of the Federal Rules of Civil Procedure allows plaintiffs to state alternative and inconsistent claims in the same pleading.[78] The mere fact that two claims in a pleading are contradictory does not mean that one or both must be dismissed at the motion to dismiss stage. However, though a plaintiff may plead legal claims and equitable claims in the alternative, "the plaintiff must still sufficiently plead facts to support each of the claims asserted in the Complaint."[79] Under Utah law, unjust enrichment is an equitable claim, so it is only available in the absence of an adequate remedy at law.[80] "Moreover, when seeking an equitable remedy, a plaintiff 'must affirmatively show a lack of an adequate remedy at law on the face of the pleading.'"[81] At the very least, a complaint asserting an unjust enrichment claim must allege the lack of an adequate legal remedy or state facts showing the lack of such a remedy as an essential element of the claim.[82]

In this case, the Complaint fails to allege the lack of an adequate legal remedy. Of course, Mr. Bott is permitted to assert legal claims and equitable claims in the alternative, even if they are inconsistent. However, to do so, he must still allege each essential element of the equitable claims. Because the Complaint does not allege the lack of an adequate remedy at law in

---

[77] Opp'n 10–11.
[78] Fed. R. Civ. P. 8(d).
[79] *ClearOne, Inc. v. RSM US LLP*, No. 2:16-CV-00736-DN, 2017 WL 923949, at *10 (D. Utah Mar. 6, 2017).
[80] *Thorpe v. Washington City*, 2010 UT App 297, ¶ 28, 243 P.3d 500, 507.
[81] *Id.* (quoting *Ockey v. Lehmer*, 2008 UT 37, ¶ 44 n. 42, 189 P.3d 51).
[82] *Id.*; *see also ClearOne, Inc.*, 2017 WL 923949 at *10–11 ("While [equitable] claims are permitted to be plead in the alternative under Rule 8, the problem is that [plaintiff] failed to allege an essential element of its equitable claims—the *non-existence* of a valid contract. Therefore, the equitable claims are dismissed for failure to state a claim upon which relief may be granted.").

connection with the unjust enrichment claim, that cause of action must be dismissed for failure to state a claim.

## III.    Accounting

Finally, Mr. Boggs argues that the accounting claim should be dismissed because it has no legal basis in a contract or fiduciary duty and because it fails to allege the lack of an adequate remedy at law.[83] Plaintiff responds that no fiduciary duty is necessary to state a claim for accounting.[84] In Utah, an accounting claim is "a legal action to compel a defendant to account for and pay over money owed to the plaintiff but held by the defendant."[85] An accounting claim may be legal or equitable depending on the facts alleged.[86] When a plaintiff claims that a defendant "unjustly retained funds to which it was not entitled" and has exclusive control of records and accounts necessary to ascertain the amount of those funds, an equitable accounting claim may be appropriate.[87] As with other equitable remedies, an accounting claim may only be maintained in the "absence of an adequate remedy at law."[88] Absent statutory authority, accounting is "not an independent legal cause of action when it is sought in connection with a tort or contractual claim for damages."[89]

In this case, Mr. Bott's accounting claim consists solely of an assertion that "Bott is entitled to an accounting by Michael and Dawn Boggs whereby they should be required to show

---

[83] MTD 23.
[84] Opp'n 12.
[85] *Failor v. MegaDyne Med. Prods., Inc*., 2009 UT App 179, ¶ 13, 213 P.3d 899, 905 (quoting BLACK'S LAW DICTIONARY 19 (7th ed. 1999)).
[86] *Id.* at 905.
[87] *Id.* at 905–06.
[88] *Id.* at 905 (quoting *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478 (1962)).
[89] *King v. XPO Logistics, Inc.*, No. 2:16-CV-434-DN, 2017 WL 213791, at *4 (D. Utah Jan. 18, 2017) (unpublished).

receipt of funds from Bott and their respective use of all amounts received from Bott including the disposition of any amounts received."[90] Plaintiff provides no statutory authority to show that accounting is an independent legal cause of action under the facts alleged here rather than a remedy. And to the extent Mr. Bott intends to assert an equitable accounting claim, it suffers from the same defect discussed above. The Complaint fails to allege the lack of an adequate remedy at law. Accordingly, the accounting cause of action must also be dismissed for failure to state a claim.

## ORDER

Defendants' [9] Motion to Dismiss is GRANTED IN PART. The fourth and fifth causes of action are DISMISSED without prejudice.

Signed June 29, 2026.

BY THE COURT

David Barlow
United States District Judge

---

[90] Compl. ¶ 107.

13